UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
UNITED STATES OF AMERICA,

     Plaintiff,

vs.

                                            **CASE NO. 1:15-cr-00706 (VSB)**

FRANCIS LORENZO et al,

     Defendant.
------------------------------------------------------------X

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION [D.E. 127]
TO DEFENDANT LORENZO'S MOTION TO DISMISS THE INDICTMENT
<u>ON GROUNDS OF DIPLOMATIC IMMUNITY [D.E. 115]</u>**

                                          **GRAY ROBINSON, P.A.**
                                          333 S.E. 2nd Avenue
                                          Suite 3200
                                          Miami, Florida  33131
                                          Telephone #: (305) 416-6880
                                          Facsimile #:  (305) 416-6887
                                          Attorney for Defendant Lorenzo
                                          Brian.Bieber@gray-robinson.com

                                          By: <u>s/Brian H. Bieber</u>
                                          BRIAN H. BIEBER
                                          Florida Bar No. 8140
                                          New York Attorney Reg. No. 4747507

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
UNITED STATES OF AMERICA,

    Plaintiff,

vs.

                                                  **CASE NO. 1:15-cr-00706 (VSB)**

FRANCIS LORENZO et al,

    Defendant.
-----------------------------------------------------------X

## **PRELIMINARY STATEMENT**

The facts are not in dispute. LORENZO was appointed by the Dominican Republic to be its Deputy Permanent Representative to the United Nations eleven (11) years before his arrest on the Criminal Complaint, (D.E. 1), and then charged by Indictment. (See D.E. 116-1). The Government sought no waiver of immunity from the sending State (the Dominican Republic). LORENZO has never waived his rights to Diplomatic Immunity.

Confronted by these uncontroverted facts, in its effort to overcome LORENZO's Diplomatic Agent immunity conferred by Article 31 of the Vienna Convention on Diplomatic Relations ("VCDR") and 22 U.S.C. § 254d, the Government produces an "after-the-fact" letter from the Department of State, (see D.E. 127-4), dated fifteen (15) days **after** the filing of LORENZO's Motion to Dismiss, (D.E. 115), tailor-made for the sole purpose of trying to convince this Court to deny LORENZO's Motion. Based solely on the "letter," the Government insists, as a matter of law: LORENZO "does not have—and never had—[Diplomatic Agent] immunity." (D.E. 127 at 2).

The Government is incorrect, **as a matter of law**. LORENZO, a lawful permanent resident ("LPR") of both the United States **and** Dominican Republic—a fact omitted in the State Department's letter—is clothed with Diplomatic Agent immunity. 22 U.S.C. § 254d. Dismissal of the Indictment as to LORENZO is warranted at this juncture.

## MEMORANDUM OF LAW

### A. *LORENZO's Status as an LPR of the United States and the Dominican Republic Does not Prohibit Dismissal of the Indictment*

The Government's sole contention, "echoed" in the State Department's letter, (see D.E. 127-4), is that "Article 38 of the VCDR eliminates" Diplomatic Agent immunity "for United States permanent residents and nationals serving as diplomatic agents." (D.E. 127 at 4). **The Government cites no precedent at all in support of its argument**. Rather, it cites to those cases which only generally emphasize the weight given to the State Department's assessment of diplomatic status, (see id. at 6) (citing, inter alia, In re Baiz, 135 U.S. 403, 421 (1890)), and attempts to distinguish a few of the cases cited by LORENZO in his Motion to Dismiss. (See D.E. 127 at 9-10). In other words, despite its bold assertions regarding the straightforwardness of the law[1] based on the "plain language" of the VCDR, the Government could not cite a single case—in all of American jurisprudence—rejecting a defendant's Diplomatic Agent immunity claim on the basis that s/he was a legal permanent resident of the both United States and another country while serving as a Diplomatic Agent to the United Nations. The reason? Because none exists. Not one case supports the Government's position "as a matter of law"—or otherwise. As set forth below,

---

[1] The Government tried a similar tactic before this Court in opposing modification of co-defendant Ng Seng's bond conditions, claiming same was inappropriate "as a matter of law," only to the concede, after being questioned by the Court, that its position was in fact unsupported by the Second Circuit, other Circuits, and the Supreme Court, (see D.E. 73-1 at 17-18), and was actually the prosecutor's opinion/argument. (See id.). Same assertion ("as a matter of law")—likewise unsupported by the law.

3

however, the State Department's own legal opinions controvert its newly issued letter, as well as the Government's argument. Dismissal as to LORENZO is appropriate.

The Government acknowledges that, pursuant to 22 U.S.C. § 288d(b) and VCDR Art. 32(1), the "sending State" of a Diplomatic Agent "may waive [that] diplomat's immunity[.]" (See D.E. 127 at 4 n.2). However, nowhere in its Response does it discuss whether, or even remotely suggest that, any such waiver from the Dominican Republic exists here. (See id.). Obviously, that is because none does. Moreover, unlike the co-defendant John W. Ashe, at no point has LORENZO waived, either "in writing[,]" or verbally, "his assertion of any immunity that would otherwise accrue to him based on his occupational status as a diplomat." (Cf. D.E. 1 at 7). This too the Government has blatantly omitted from its Response. No "waiver" of immunity was ever executed by LORENZO. Dismissal is warranted here as to LORENZO.

The Government does not dispute, nor could it, the fact that LORENZO served as the Dominican Republic's Deputy Permanent Representative to the United Nations years **before**, (see D.E. 127 at 6), **at** the time of the acts set forth in, (see id. at 7), and **subsequent** to, the filing of the Criminal Complaint against LORENZO. (See id. n.3) (acknowledging that it was not until two days **after** LORENZO's arrest that he was "suspended[2] by the Dominican Republic UN Mission for a period[3] of at least six months[.]"). But rather than "tackle" these critical issues head-on, the

---

[2] Though the Government does not press the argument, presumably because it knows it cannot succeed, the Government mentions almost in passing that the State Department "treated" LORENZO's six (6)-month suspension as "termination" of LORENZO's "diplomatic status." (D.E. 127 at 7 n.3). However, the Government took a completely different view of LORENZO's suspension as it related to his immunity at his detention hearing when it stated that "if his country" (the Dominican Republic) "chooses to engage in certain actions" (i.e., **not** waive immunity), then "he cannot be prosecuted nearly as easily or potentially at all and he is [an] incredibly well placed and powerful man." (See Exhibit 1, at 80:1-5).

[3] The fact that LORENZO's "suspension" is for a fixed "period" of time (i.e., not permanent) patently contradicts the State Department's interpretation of same as a "termination." Compare Black's Law Dictionary (10th ed. 2014) (defining "suspend" as "1. To interrupt; postpone; defer . . . 2. To **temporarily** keep (a person) from performing a function, occupying an office, holding a job, or exercising a right or privilege[.]") (emphasis added), with id. (defining "terminate" as "1. To put an end to; to bring to an end. 2. **To end**; to conclude.") (emphasis added); see also United States v. Guinand, 688 F. Supp. 774 (D.D.C. 1988) (no immunity granted to diplomat who was "**terminated**" by the Embassy of Peru and "given the usual period within which to depart the country.") (emphasis

4

Government "punts" by way of a one (1)-sentence footnote, claiming that the legal questions surrounding those facts are "irrelevant to [LORENZO's] motion since [he] *never* enjoyed any immunity other than official acts immunity." (Id. at 10 n.5) (emphasis in original).

**B.** ***The State Department's Letter, (D.E. 127-4), is Contradicted by its Legal Analysis Elsewhere and the Relevant Case Law***

The Government correctly notes that "courts have generally accepted as conclusive the views of the State Department as to the fact of diplomatic status." (D.E. 127 at 6) (quoting Abdulaziz v. Metropolitan Dade County, 741 F.2d 1328, 1331 (11th Cir. 1984)). So, in response to LORENZO's Motion to Dismiss, the Government offers an "ex post facto" letter, drafted by the State Department fifteen (15) days **after** the filing of LORENZO's Motion, which states, in relevant part:

> As a United States citizen, Ambassador Lorenzo did not satisfy established Department of State criteria required to be considered for diplomatic privileges and immunities. To enjoy diplomatic privileges and immunities, Ambassador Lorenzo would have to show, *inter alia*, that he is not a United States citizen and that he possessed an appropriate non-immigrant status in the United States.
> It is the policy and practice of the United States, that United States citizens working in a diplomatic capacity for a foreign government's permanent mission at the UN enjoy only official acts immunity, not diplomatic immunity. Accordingly, Mr. Lorenzo had only official acts immunity for the time period given.

(D.E. 127-4 at 1). Surprisingly though, it fails to discuss—even in passing—the fact that in addition to being an LPR of the United States, **LORENZO is, and has been since birth, an LPR of the Dominican Republic**, the sending State for his mission to the United Nations.[4] In addition, as set

---

added). Unlike Guinand, LORENZO is only temporarily suspended—**not** terminated.

[4] It is troubling that this fact was omitted from the State Department's letter given the obvious importance of same to LORENZO' Motion to Dismiss, and the Government's attempted rebuttal thereof. Did the Government withhold this critical fact from the State Department? Surely the "[t]he staff lawyers" at the United States Attorney's office know they "have the burden of 'letting the left hand know what the right hand is doing' or has done." Santobello v. New York, 404 U.S. 257, 262 (1971); see also Kyles v. Whitley, 514 U.S. 419, 438 (1995) ("[N]o one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that procedures and regulations can be established to . . . insure communication of all relevant information on each case to

forth below, the letter is clearly out of sync with what the State Department has set forth in its Guidance for Law Enforcement and Judicial Authorities, (D.E. 127-2), as well as its apparent legal advice to Special Agent FBI Special Agent Jason P. Alberts, the agent responsible for the Criminal Complaint, (D.E. 1), (and subsequent arrest and Indictment) sub judice.

Significantly, the letter cites **no legal precedent** for its position. (See id.). That is because for the Government, the reality is inescapable: as discussed more fully below, no American Court has **ever** denied a criminal defendant Diplomatic Agent immunity on the basis that s/he was a legal permanent resident of more than one country. Cf. United States v. Guinand, 688 F. Supp. 774 (D.D.C. 1988).

These contradictions, each of which support LORENZO's Motion to Dismiss, are analyzed in turn.

### 1. The State Department's Guidance to Law Enforcement and Judicial Authorities Contradicts its Letter

Unlike the unambiguous position set forth in its post-Motion to Dismiss letter, the State Department's "views" on the issue have been far from consistent. In the State Department's guidebook to law enforcement and Judges, also cited by the Government, (D.E. 127-2), under the heading entitled, "Nationals or Permanent Residents of the United States[,]" the State Department cautions would-be arresting officers:

> The United States, as a matter of policy, does not **normally** accept as diplomatic agents its own nationals, legal permanent residents of the United States, or others who are 'permanently resident in' in the United States.

---

every lawyer who deals with it."). The failure of the State Department, whose "letters" are ordinarily all but sacrosanct in determining diplomatic status, see Abdulaziz, 741 F.2d at 1331, to even mention this critical fact is odd, to say the least. This issue is ripe for the Court to decide. Based on 22 U.S.C. § 254d and the relevant case law, we urge this Court to dismiss the Indictment as to LORENZO.

Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities, at 9 (emphasis added) (quoting VCDR Art. 38(2)). It is crystal clear from that language that even the State Department acknowledges there are scenarios where an LPR of the United States is entitled to diplomatic immunity. The guidebook does not set forth what those scenarios are, presumably because, as set forth below, the law regarding LPRs of multiple countries (in addition to the United States) does not render Diplomatic Agent immunity inapplicable, see id.; see also United States v. Guinand, 688 F. Supp. 774 (D.D.C. 1988), nor would it even make sense that this would be "the law."

### 2. The State Department's Legal Advice, Summarized in the Criminal Complaint, Contradicts its Letter

A careful reading of the Criminal Complaint sub judice actually reveals that the State Department agrees that LORENZO is entitled to diplomatic immunity, beyond mere "official act" immunity. (See D.E. 1). The Criminal Complaint also demonstrates that the Government sought the legal advice of the State Department, and, in stark contrast to how it proceeded with respect to LORENZO, thoroughly vetted how it should proceed with the filing of criminal charges against, and arrest of, co-defendant John W. Ashe. (See id.). In his investigative overview of the criminal charges, FBI Special Agent ("S/A") Jason P. Alberts, per his multiple discussions with the State Department, explained in great detail the State Department's assessment of Ashe's diplomatic status:

> ASHE **no longer serves a diplomat** representing Antigua or any other county. I understand from my discussions with the United States Department of State that, **at most**, ASHE enjoys residual official act immunity **based on his former status as a diplomat** from Antigua from in or about February 2000 to in or about December 2014 and as President of the United Nations General Assembly from in or about September 2013 to in or about October 2014. ASHE's service in these positions provides immunity only for conduct within the scope of his official positions, which must be

7

>> affirmatively asserted in any judicial proceeding, to the extent he is permitted to do so **notwithstanding an immunity waiver he executed in connection with becoming a U.S. legal permanent resident** in or about October 2000. **Official act immunity does not provide protection from arrest** and does not cover conduct outside the scope of one's official position, such as the filing of false personal U.S. tax returns.

(D.E. 1 at 6-7 n.1) (emphasis added).

> Based on my review of ASHE's immigration file, I have learned that when ASHE applied to become an LPR [lawful permanent resident], in or about October 2000, **ASHE waived in writing his assertion of any immunity that would otherwise accrue to him based on his occupational status as a diplomat**.

(Id. at 7) (emphasis added).

There are three critical points apparent from S/A Alberts' summary of his discussions with the State Department: **First**, that in the State Department's view, Ashe (unlike LORENZO), "at most" could only theoretically assert official act immunity sub judice, not Diplomatic Agent immunity, because the latter no longer existed by virtue of Ashe's "**former**" (i.e., past-tense, non-existent at the time of arrest) "status as a diplomat." (Id. at 6-7 n.1). **Second**, that while serving as a diplomat, Ashe contemporaneously sought to become a U.S. legal permanent resident, and was required to execute an "immunity waiver" at that time. (See id.). And **third**, the purpose of the "immunity waiver" was to ensure that "ASHE waived in writing his assertion of any immunity that would otherwise accrue to him based on his [then ongoing] occupational status as a diplomat." (Id. at 7).

The striking, and clear, inferences from this language are this: even according to the State Department, had Ashe [1] still been serving as a diplomat at the time of his arrest, and [2] never executed an "immunity waiver" at the time he sought to become a U.S. LPR, then [3] "his occupational status as a diplomat"—**not withstanding his dual LPR status**—would have

8

"otherwise accrue[d]" to him and afforded him "protection from arrest" on the basis of Diplomatic Agent immunity. (Id. at 6-7 n.1).

Juxtaposed against this lengthy State Department "briefing" on the status of Ashe's immunity, is S/A Alberts' cryptic one (1)-sentence summary of the State Department's view of LORENZO's entitlement to diplomatic immunity:

> I understand from the United States Department of State that, like defendant JOHN W. ASHE, LORENZO enjoys official act immunity, which must be asserted affirmatively and provides for immunity from criminal prosecution only for official acts taken in connection with LORENZO's diplomatic position.

(Id. at 8).

But a plain reading of S/A Alberts' statements in the Complaint reveals that the State Department viewed LORENZO's entitlement to Diplomatic immunity very differently than Ashe's. Glaringly—**and shockingly**—absent from S/A Alberts' statements regarding LORENZO is what the State Department made crystal clear regarding Ashe: that Ashe "**at most** . . . enjoys residual official act immunity[,]" but not Diplomatic Agent immunity. (Id. at 6-7 n.1) (emphasis added). The clear and deliberate failure of S/A Alberts to even mention the subject of LORENZO's potential entitlement to Diplomatic Agent, not merely residual act, immunity, or set forth in the Criminal Complaint what the State Department actually believes regarding same, demonstrates that validity of LORENZO's argument—his Diplomatic Agent immunity pursuant to 22 U.S.C. § 254d bars this prosecution and dismissal of the Indictment is mandated.

Indeed, in his discussions with the State Department regarding the potential diplomatic immunity of co-defendants Shiwei Yan and Heidi Hong Piao, S/A Alberts emphasized:

> Based on my discussions with the Department of State, I understand that YAN and PIAO, who are naturalized United States citizens, were later accredited as diplomatic advisors for the period between September 2013 and September 2014 . . . . **At most**, YAN and PIAO

9

> accordingly have residual official act immunity during this time period.

(D.E. 1 at 32 n.8) (emphasis added). Again, the fact that the "at most" language appears for Yan, Piao and Ashe, but does not appear with respect to LORENZO makes it clear that during S/A Alberts' "discussions" with the Department of State, the latter plainly **did not** rule out LORENZO's entitlement to Diplomatic Agent Immunity. (See id.). This Court is in the position to interpret the applicable case law as it relates to 22 U.S.C. § 254d and grant LORENZO's Motion to Dismiss.

### 3. The Only Case Law Directly on Point Contradicts the State Department's Letter

The only[5] case law which is close to on point weighs in favor of granting LORENZO's Motion to Dismiss. See Guinand, 688 F. Supp. 774. In Guinand, cited by LORENZO, (D.E. 116 at 8), but totally ignored by the Government, (see D.E. 127), the defendant was "charged with distribution of cocaine in violation of 21 U.S.C. § 841(a) at a time when he enjoyed diplomatic immunity as a member of the administrative staff of the Embassy of Peru." Id. Consequently, Guinand, like LORENZO, "moved to dismiss the indictment under the provisions of 22 U.S.C. § 254d[.]" Summarizing the facts giving rise to the Indictment, the District Court stated as follows:

> [D]efendant entered into a narcotic transaction with an undercover agent of the Metropolitan Police Department. Thereafter Sergeant Gonzalez of the Metropolitan Police Department, with the knowledge and approval of an Assistant United States Attorney, spoke with defendant and advised him that he would be subject to immediate deportation from this country under the circumstances unless he agreed to cooperate with the police and the Drug Enforcement Administration. It was represented to defendant that, if he did this, his departure from the country could be delayed until his cooperation had been completed and a reasonable time thereafter. A reasonable time is usually interpreted as thirty days.

---

[5] The undersigned's computer-assisted research failed to uncover any other Federal criminal case involving a Diplomatic Agent immunity claim where the defendant was an LPR of both the United States, and another country. The Government, likewise, cites no case law in support of denying an immunity claim on the basis that the defendant was an LPR of the U.S. and another country.

10

> \*     \*     \*
>
> [F]ollowing defendant's cooperation with the authorities, the Embassy of Peru terminated his employment and he was given the usual period within which to depart the country. **In the interim,** he married an American citizen and **has been accorded permanent resident alien status by the Immigration and Naturalization Service.**

Id. (emphasis added).

Ultimately, the District Court held that Guinand was not entitled to diplomatic immunity because [1] "it clearly appear[ed] that [he was] no longer clothed with diplomatic immunity" by virtue of his pre-arrest, pre-Indictment **termination**[6] from his diplomatic position, and [2] that he "failed to depart from the United States within a reasonable time after his cooperation with the police and since[.]" Id. at 776-77. Most tellingly, however, within the context of its holding, the District Court addressed the fact that Guinand acquired the status of "permanent resident alien[.]" Id. Although the District Court denied the Motion to Dismiss, it is clear the Court's ruling was **despite** Guinand's status as a dual permanent resident—not **because** of it. See id. And therein lies the flaw in the Government's argument which is unsupported by any legal precedent. See id. Dismissal of the Indictment as to LORENZO is mandated pursuant to 22 U.S.C. § 254d.

---

[6] LORENZO was not "terminated." (See supra, at n.3).

11

## CONCLUSION

**WHEREFORE**, Defendant, **FRANCIS LORENZO,** prays this Honorable Court grant Defendant's Motion to Dismiss the Indictment on Grounds of Diplomatic Immunity, (D.E. 115), and such other relief as is just and proper.

                                        **GRAY ROBINSON, P.A.**
                                        333 S.E. 2nd Avenue
                                        Suite 3200
                                        Miami, Florida  33131
                                        Telephone #: (305) 416-6880
                                        Facsimile #:  (305) 416-6887
                                        Attorney for Defendant Lorenzo
                                        Brian.Bieber@gray-robinson.com

Dated: January 12, 2016                  By: s/Brian H. Bieber
                                        BRIAN H. BIEBER
                                        Florida Bar No. 8140
                                        New York Attorney Reg. No. 4747507

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                        s/Brian H. Bieber
                                        BRIAN H. BIEBER