UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -  x

UNITED STATES OF AMERICA          :          SUPERSEDING INDICTMENT

              -v.-                :          S5 15 Cr. 706 (VSB)

NG LAP SENG,                      :
   a/k/a "David Ng,"
   a/k/a "Wu Liseng,"             :
   a/k/a "Boss Wu," and
JEFF C. YIN,                      :
   a/k/a "Jeff Chuan,"
   a/k/a "Yin Chuan,"             :

              Defendants.         :

- - - - - - - - - - - - - - -  x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: NOV 2 2 2016

### COUNT ONE

(Conspiracy to Pay Bribes and Gratuities and
to Violate the Foreign Corrupt Practices Act)

The Grand Jury charges:

### RELEVANT INDIVIDUALS AND ENTITIES

#### *The United Nations*

1.    The United Nations ("UN") is an international
organization headquartered in New York, New York.  The UN is
comprised of six parts: the Secretariat, the General Assembly,
the Security Council, the Economic and Social Council, the
International Court of Justice, and the Trusteeship Council.
The UN is a "public international organization" as that term is
used in the Foreign Corrupt Practices Act ("FCPA").

2.    The Secretariat is the principal executive arm of the
UN.   It is headed by the UN Secretary-General, who serves as the
chief administrative officer of the UN as a whole.

3.    The General Assembly ("UNGA") is the main deliberative
assembly of the UN and is comprised of all UN member countries.
Member countries act in the UNGA through their ambassadors,
deputy ambassadors, and other authorized representatives, and
each member country has an equal vote in the UNGA.   On an annual
basis, the UNGA elects a President who, among other things,
presides over the current UNGA session and represents the UNGA
at various international forums and events.   Among other powers,
the UNGA sets and oversees the UN's "Regular Budget," and
establishes each member country's mandatory contribution.   The
United States annually provides millions of dollars in mandatory
contributions to the UN Regular Budget.

4.    The United States also provides voluntary
contributions to particular UN programs, funds, and entities,
including the United Nations Development Programme ("UNDP"),
which is a subsidiary program of the UNGA.   The UN Office for
South-South Cooperation ("UNOSSC") is an office within UNDP that
focuses on issues related to cooperation among developing
countries.   Since at least in or about 2008, UNOSSC has run an

2

annual "Global South-South Development Expo" (the "UNOSSC Expo"), hosted in a different country or city each year.   In or about late August 2015, in lieu of a UNOSSC Expo, UNOSSC held a "forum" in Macau, China.

### *The Antiguan Ambassador*

5.     For more than 20 years, up to and including in or about December 2014, an individual not named as a defendant herein (the "Antiguan Ambassador") served in various positions at the Permanent Mission of Antigua and Barbuda ("Antigua") to the UN.   Beginning in or about 2004, the Antiguan Ambassador served as the Permanent Representative of Antigua to the UN, that is, Antigua's ambassador to the UN.   Beginning in or about 2011, the Antiguan Ambassador expected to be elected as the 68th UNGA President.   In or about June 2013, the Antiguan Ambassador was elected as the UNGA President for a one-year term that began in or about September 2013 and ended in or about September 2014. The Antiguan Ambassador also served, from in or about May 2012 until in or about September 2013, as President of the High-Level Committee on South-South Cooperation, a subsidiary committee of the UNGA that serves as a policymaking body on issues related to cooperation among developing countries.   The Antiguan Ambassador was a "foreign official" as that term is used in the FCPA.

### The Dominican Ambassador

6.   From in or about 2004, up to and including at least in or about October 2015, an individual not named as a defendant herein (the "Dominican Ambassador") served as Deputy Permanent Representative to the UN for the Dominican Republic, that is, the Dominican Republic's deputy ambassador to the UN.  During the period when the Antiguan Ambassador served as UNGA President, the Dominican Ambassador served as a Special Adviser to the UNGA President.  The Dominican Ambassador was a "foreign official" as that term is used in the FCPA.

### NG LAP SENG and JEFF C. YIN

7.   During all times relevant to this Superseding Indictment, NG LAP SENG ("NG"), a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," the defendant, was the head of a real estate development company based in Macau, China (the "Macau Real Estate Development Company").  In or about late 2009, NG helped to found a non-governmental organization based in New York, New York ("NGO-1"), purportedly as a media platform dedicated to covering stories regarding sustainable development, the UN, and related topics.  Since its creation, NG has served as at least the principal source of funding for NGO-1, and has wired millions of dollars from Macau, China to NGO-1 in New

4

York, New York.  NG appointed the Dominican Ambassador "Honorary

President" of NGO-1 and, acting in part through NGO-1, paid the

Dominican Ambassador at least hundreds of thousands of dollars

between in or about 2010 and in or about 2015.

       8.    Between at least in or about 2012 and at least in or

about September 2015, JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a

"Yin Chuan," the defendant, was the principal assistant to NG

LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu,"

the defendant.  In that role, YIN communicated on NG's behalf,

assisted in wiring money on NG's behalf, made travel plans to

and from the United States for NG, and arranged meetings for and

attended meetings with NG in the United States, among other

duties.  On behalf of NG, YIN also helped to oversee the

financing and expenditures of NGO-1, from which YIN received

payments.

THE BRIBERY AND MONEY LAUNDERING SCHEME

       9.    From at least in or about 2011, up to and including in

or about September 2015, NG LAP SENG, a/k/a "David Ng," a/k/a

"Wu Liseng," a/k/a "Boss Wu," the defendant, and, beginning in

or about 2012, JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin

Chuan," the defendant, and others known and unknown, engaged in

an international bribery and money laundering scheme, in which

5

they paid at least hundreds of thousands of dollars to the Antiguan Ambassador and the Dominican Ambassador (together, the "Ambassadors") in exchange for official action to benefit NG and his company, the Macau Real Estate Development Company.

10. More specifically, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, paid and agreed to pay bribes to the Ambassadors for the purpose of obtaining official action for the benefit of NG and his company, as opportunities arose, by each of the Ambassadors, and for the purpose of having the Ambassadors influence, exert pressure on, and advise other UN officials and diplomats, including the UN Secretary-General, intending for those officials and diplomats to take official action, as opportunities arose, to advance the interests of NG and his company. NG and YIN also paid and agreed to pay the Ambassadors to reward their efforts to take, and to influence other UN officials and diplomats to take, official action for the benefit of NG and his company.

11. The principal objective of NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," the defendant, was to obtain official action from the UN with respect to a multi-billion dollar conference center that NG hoped to build in

6

Macau, China (the "Macau Conference Center"), using his company,
the Macau Real Estate Development Company.  In particular, NG
sought formal UN support for the Macau Conference Center,
including establishing the Macau Conference Center as the
permanent site of the annual UNOSSC Expo and as a location for
other meetings, forums, and events associated with the UN
(collectively, "Formal UN Support").

12.   During the course of the scheme, in an effort to
obtain Formal UN Support for the Macau Conference Center, NG LAP
SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," the
defendant, with the assistance of JEFF C. YIN, a/k/a "Jeff
Chuan," a/k/a "Yin Chuan," the defendant, agreed to and did pay
bribes to the Ambassadors in various forms.  Their payments to
the Antiguan Ambassador included cash, payments to the Antiguan
Ambassador's wife, and payments to one or more third-parties to
cover the Antiguan Ambassador's personal expenses.  NG and YIN
also agreed to and did transfer funds to one or more business
bank accounts in the United States that the Antiguan Ambassador
controlled (the "PGA Accounts"), the purported purpose of which
was to raise money for his UNGA Presidency.  NG's and YIN's
payments to the Dominican Ambassador included checks, cash,
payments to one or more third-parties to cover the Dominican

Ambassador's personal expenses, and payments to one or more of the Dominican Ambassador's family members, some of which were transmitted to a company in the Dominican Republic affiliated with the Dominican Ambassador's brother (the "Dominican Company").

13.  In exchange for the bribes paid by NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," the defendant, which were facilitated by JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendant, each of the Ambassadors agreed to and did, among other things, use their positions to advance and to seek to have others advance NG's interest in obtaining Formal UN Support for the Macau Conference Center.

a.  For example, the Antiguan Ambassador, aided by the Dominican Ambassador, submitted an official UN document (the "UN Document") to the UN Secretary-General, which claimed that there was a purported need to build the Macau Conference Center to support the UN's global development goals, including the growth of information and communication technologies in developing countries, and specifically named the Macau Real Estate Development Company as a partner in the initiative.  The UN Document requested that the UN Secretary-General circulate the UN Document "as a document of the sixty-sixth session of the

General Assembly," under a specific item of the official UNGA agenda.

   b. Further, after the UN Secretary-General circulated the UN Document as an official part of the UNGA record, the Antiguan Ambassador and Dominican Ambassador traveled to Macau, China as part of an official visit by the UNGA President, met with NG and YIN, and agreed to continue their efforts to obtain Formal UN Support for the Macau Conference Center.

  14. To effect the unlawful scheme described herein, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, agreed to and did transmit funds from China to the United States and from the United States to the Dominican Republic, including (i) funds sent from China to one or more accounts of NGO-1, and (ii) funds sent from the United States to one or more accounts of the Dominican Company.

  15. As a result of the efforts of NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, UNOSSC did not hold a UNOSSC Expo in 2015.  Instead, UNOSSC held a "forum" in Macau, China, co-hosted by a foundation in the name

of the Macau Real Estate Development Company, in or about late August 2015.  At this forum, NG continued to press his goal of obtaining Formal UN Support for the Macau Conference Center. The forum was attended by the Ambassadors and various other diplomats and UN officials, who were provided with, among other things, free iPads and/or other things of value.  NG, with the assistance of YIN, also provided a UNOSSC official, approximately two weeks before the forum, with an interest-free loan.  Following the forum, NG, with the assistance of YIN, continued the scheme by agreeing to make additional payments to each of the Ambassadors.

JEFF C. YIN'S EVASION OF TAXES

16.  During the course of the scheme, JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendant, agreed to assist and assisted the Dominican Ambassador in concealing portions of the Dominican Ambassador's income from the Internal Revenue Service ("IRS").  YIN also took steps to conceal portions of YIN's own income from the IRS and to evade paying his own income taxes.  Among other things, YIN caused NGO-1 to pay him with checks payable to cash and provided false and/or misleading information to his accountant with respect to YIN's income.

10

## STATUTORY ALLEGATIONS

17.   From at least in or about 2011, up to and including in or about September 2015, in the Southern District of New York and elsewhere, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 18, United States Code, Section 666, and Title 15, United States Code, Sections 78dd-2 and 78dd-3.

18.   It was a part and an object of the conspiracy that NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, and others known and unknown, would and did corruptly give, offer, and agree to give a thing of value to a person, with the intent to influence and reward an agent of an organization, to wit, the UN, in connection with a business, transaction, and series of transactions of such organization, involving a thing of value of $5,000 and more, while such organization was in receipt of, in a one year period, benefits in excess of $10,000 under a Federal program involving a grant,

11

contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2), to wit, NG and YIN agreed to pay the Antiguan Ambassador and the Dominican Ambassador in exchange for, to influence, and to reward the taking of official action to benefit NG and the Macau Real Estate Development Company, including advancing NG's interest in obtaining Formal UN Support for the Macau Conference Center.

19. It was a further part and an object of the conspiracy that NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, and others known and unknown, being a domestic concern and an officer, director, employee, and agent of a domestic concern and a stockholder thereof acting on behalf of such domestic concern, would and did willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offer, gift, promise to give, and authorize the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value will be offered, given, and promised, directly and indirectly, to a

12

foreign official, for purposes of: (i) influencing an act and decision of such foreign official in his official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official, and (iii) securing an improper advantage, in order to assist in obtaining or retaining business for and with, and directing business to, a person, in violation of Title 15, United States Code, Section 78dd-2(a)(1) & 3, to wit, NG and YIN agreed to pay the Antiguan Ambassador and the Dominican Ambassador in exchange for and to influence the taking of official action to benefit NG and the Macau Real Estate Development Company and to secure an improper advantage for NG and the Macau Real Estate Development Company, including advancing NG's interest in obtaining Formal UN Support for the Macau Conference Center.

20. It was a further part and an object of the conspiracy that NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, and others known and unknown, would and did, while in the territory of the United States, willfully and corruptly make use of the mails and a means and instrumentality of interstate commerce and do an act in furtherance of an offer, payment, promise to pay, and authorization of the payment of

13

money, and offer, gift, promise to give, and authorize the
giving of a thing of value to a foreign official, and to a
person, while knowing that all and a portion of such money and
thing of value will be offered, given, and promised, directly
and indirectly, to a foreign official, for purposes of:
(i) influencing an act and decision of such foreign official in
his official capacity, (ii) inducing such foreign official to do
and omit to do an act in violation of the lawful duty of such
official, and (iii) securing an improper advantage, in order to
assist in obtaining or retaining business for and with, and
directing business to, a person, in violation of Title 15,
United States Code, Section 78dd-3(a)(1) & (3), to wit, NG and
YIN agreed to pay the Antiguan Ambassador and the Dominican
Ambassador in exchange for and to influence the taking of
official action to benefit NG and the Macau Real Estate
Development Company and to secure an improper advantage for NG
and the Macau Real Estate Development Company, including
advancing NG's interest in obtaining Formal UN Support for the
Macau Conference Center.

## Overt Acts

21.  In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed and caused to be committed in the Southern District of New York and elsewhere:

a.  Starting in or about May 2011 and continuing into at least in or about March 2015, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," the defendant, caused NGO-1 to make regular payments to the Antiguan Ambassador's wife.

b.  On or about February 24, 2012, the Antiguan Ambassador, aided by the Dominican Ambassador, submitted the UN Document to the UN Secretary-General.

c.  On or about February 5, 2013, NG and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendant, transmitted or caused to be transmitted approximately $60,000 from a bank account of NG in Macau, China to the Dominican Company.

d.  On or about June 5, 2013, the Antiguan Ambassador, aided by the Dominican Ambassador, submitted a formal revision to the UN Document identifying the Macau Real Estate Development Company as a partner in the Macau Conference Center project.

15

e.    On or about November 19, 2013, YIN sent an email
to the Dominican Ambassador stating that NG was "un-satisfied"
and the "wire will be on halt until any further progress is
made" on the Macau Convention Center project.

f.    In or about March 2014, the Antiguan Ambassador
and the Dominican Ambassador traveled to China and met with NG
and YIN regarding the Macau Conference Center project.

g.    On or about June 3, 2014, NG and YIN caused NGO-1
to transmit approximately $200,000 to one of the PGA Accounts.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Payment of Bribes and Gratuities)

The Grand Jury further charges:

22.   The allegations set forth in paragraphs One through
Sixteen and Twenty-One are incorporated by reference as if set
forth fully herein.

### STATUTORY ALLEGATIONS

23.   From at least in or about 2011, up to and including in
or about September 2015, in the Southern District of New York
and elsewhere, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng,"
a/k/a "Boss Wu," the defendant, and, beginning in or about 2012,
JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the

16

defendant, corruptly gave, offered, and agreed to give a thing
of value to a person, with the intent to influence and reward an
agent of an organization, to wit, the UN, in connection with a
business, transaction, and series of transactions of such
organization, involving a thing of value of $5,000 and more,
while such organization was in receipt of, in any one year
period, benefits in excess of $10,000 under a Federal program
involving a grant, contract, subsidy, loan, guarantee,
insurance, and other form of Federal assistance, to wit, NG and
YIN paid the Antiguan Ambassador and the Dominican Ambassador in
exchange for, to influence, and to reward the taking of official
action to benefit NG and the Macau Real Estate Development
Company, including advancing NG's interest in obtaining Formal
UN Support for the Macau Conference Center.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

### COUNT THREE

(Violation of the Foreign Corrupt Practices Act: Domestic
Concern)

The Grand Jury further charges:

24.   The allegations set forth in paragraphs One through
Sixteen and Twenty-One are incorporated by reference as if set
forth fully herein.

17

## STATUTORY ALLEGATIONS

25.   From at least in or about 2011, up to and including in or about September 2015, in the Southern District of New York and elsewhere, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," the defendant, and, beginning in or about 2012, JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendant, being a domestic concern and an officer, director, employee, and agent of a domestic concern and a stockholder thereof acting on behalf of such domestic concern, willfully and corruptly made use of the mails and a means and instrumentality of interstate commerce in furtherance of an offer, payment, promise to pay, and authorization of the payment of money, and offered, gifted, promised to give, and authorized the giving of a thing of value to a foreign official, and to a person, while knowing that all and a portion of such money and thing of value would be offered, given, and promised, directly and indirectly, to a foreign official, for purposes of: (i) influencing an act and decision of such foreign official in his official capacity, (ii) inducing such foreign official to do and omit to do an act in violation of the lawful duty of such official, and (iii) securing an improper advantage, in order to assist in obtaining or retaining business for and with, and directing business to, a

18

person, to wit, NG and YIN paid the Antiguan Ambassador and the
Dominican Ambassador in exchange for and to influence the taking
of official action to benefit NG and the Macau Real Estate
Development Company and to secure an improper advantage for NG
and the Macau Real Estate Development Company, including
advancing NG's interest in obtaining Formal UN Support for the
Macau Conference Center.

(Title 15, United States Code, Sections 78dd-2(a)(1)(A), 78dd-
2(a)(3)(A), 78dd-2(g)(2)(A); Title 18, United States Code,
Section 2.)

## COUNT FOUR

(Violation of the Foreign Corrupt Practices Act: Within the
United States)

The Grand Jury further charges:

26.   The allegations set forth in paragraphs One through
Sixteen and Twenty-One are incorporated by reference as if set
forth fully herein.

### STATUTORY ALLEGATIONS

27.   From at least in or about 2011, up to and including in
or about September 2015, in the Southern District of New York
and elsewhere, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng,"
a/k/a "Boss Wu," the defendant, and, beginning in or about 2012,
JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the

19

defendant, while in the territory of the United States,
willfully and corruptly made use of the mails and a means and
instrumentality of interstate commerce and did an act in
furtherance of an offer, payment, promise to pay, and
authorization of the payment of money, and offered, gifted,
promised to give, and authorized the giving of a thing of value
to a foreign official, and to a person, while knowing that all
and a portion of such money and thing of value would be offered,
given, and promised, directly and indirectly, to a foreign
official, for purposes of: (i) influencing an act and decision
of such foreign official in his official capacity, (ii) inducing
such foreign official to do and omit to do an act in violation
of the lawful duty of such official, and (iii) securing an
improper advantage, in order to assist in obtaining or retaining
business for and with, and directing business to, a person, to
wit, NG and YIN paid the Antiguan Ambassador and the Dominican
Ambassador in exchange for and to influence the taking of
official action to benefit NG and the Macau Real Estate
Development Company and to secure an improper advantage for NG
and the Macau Real Estate Development Company, including

20

advancing NG's interest in obtaining Formal UN Support for the Macau Conference Center.

(Title 15, United States Code, Sections 78dd-3(a)(1)(A), 78dd-3(a)(3)(A), 78dd-3(e)(2)(A); Title 18, United States Code, Section 2.)

## COUNT FIVE

(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

28. The allegations set forth in paragraphs One through Sixteen and Twenty-One are incorporated by reference as if set forth fully herein.

## STATUTORY ALLEGATIONS

29. From at least in or about 2011, up to and including in or about September 2015, in the Southern District of New York and elsewhere, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(2)(A).

30. It was a part and an object of the conspiracy that NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the

21

defendants, and others known and unknown, would and did knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside of the United States and to a place in the United States from and through a place outside of the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, (a) the payment of bribes and gratuities charged in Count Two of this Superseding Indictment, (b) the violations of the FCPA charged in Counts Three and Four of this Superseding Indictment, and (c) the bribery of one or more foreign officials, in violation of Title 18, United States Code, Section 1956(a)(2)(A), to wit, NG and YIN agreed to transmit and cause to be transmitted funds from China to the United States, and from the United States to the Dominican Republic, in furtherance of a scheme to pay the Antiguan Ambassador and the Dominican Ambassador in exchange for, to influence, and to reward the taking of official action to benefit NG and the Macau Real Estate Development Company and to secure an improper advantage for NG and the Macau Real Estate Development Company,

including advancing NG's interest in obtaining Formal UN Support

for the Macau Conference Center.

(Title 18, United States Code, Section 1956(h).)

### COUNT SIX

(Money Laundering)

The Grand Jury further charges:

31.  The allegations set forth in paragraphs One through

Sixteen and Twenty-One are incorporated by reference as if set

forth fully herein.

STATUTORY ALLEGATIONS

32.  From at least in or about 2011, up to and including in

or about September 2015, in the Southern District of New York

and elsewhere, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng,"

a/k/a "Boss Wu," the defendant, and, beginning in or about 2012,

JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the

defendant, knowingly transported, transmitted, and transferred,

and attempted to transport, transmit, and transfer, a monetary

instrument and funds from a place in the United States to and

through a place outside of the United States and to a place in

the United States from and through a place outside of the United

States, with the intent to promote the carrying on of specified

unlawful activity, to wit, (a) the payment of bribes and

23

gratuities charged in Count Two of this Superseding Indictment, (b) the violations of the FCPA charged in Counts Three and Four of this Superseding Indictment, and (c) the bribery of one or more foreign officials, in violation of Title 18, United States Code, Section 1956(a)(2)(A)), to wit, NG and YIN transmitted and caused to be transmitted funds from China to the United States, and from the United States to the Dominican Republic, in furtherance of a scheme to pay the Antiguan Ambassador and the Dominican Ambassador in exchange for, to influence, and to reward the taking of official action to benefit NG and the Macau Real Estate Development Company and to secure an improper advantage for NG and the Macau Real Estate Development Company, including advancing NG's interest in obtaining Formal UN Support for the Macau Conference Center.

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

## COUNT SEVEN

(Conspiracy to Defraud the United States)

The Grand Jury further charges:

33.  The allegations set forth in paragraphs One through Sixteen and Twenty-One are incorporated by reference as if set forth fully herein.

34.    From at least in or about 2013, up to and including in or about Spring 2015, in the Southern District of New York and elsewhere, JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, to impede, impair, defeat, and obstruct the lawful and legitimate governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income taxes.

Overt Acts

35.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed and caused to be committed in the Southern District of New York and elsewhere:

a.    On or about January 5, 2013, the Dominican Ambassador sent an email to JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendant, with information concerning wiring funds to the Dominican Company.

b.    On or about February 5, 2013, YIN transmitted or caused to be transmitted approximately $60,000 from a bank account in Macau, China to the Dominican Company.

c.    On or about December 3, 2013, YIN deposited or caused to be deposited a check of NGO-1, made out to "petty cash," into a bank account of YIN in New York, New York.

d.    On or about April 1, 2014, YIN sent an email to the Dominican Ambassador attaching wire receipts indicating that more than $100,000 had been wired from a bank account in Macau, China to the Dominican Company.

e.    On or about April 21, 2014, YIN sent an email to NGO-1's bookkeeper stating, "I had some trouble with the IRS last year.  So can I please ask you to take my salary as 'Petty Cash' within the company, and give me the cash every time we meet?"

f.    On or about June 2, 2014, YIN cashed or caused to be cashed two checks of NGO-1, each made out to "petty cash," one stating that it was for "Jeff April salary," and the other stating that it was for "Jeff May salary," in New York, New York.

g.    On or about February 18, 2015, YIN transmitted or caused to be transmitted approximately $90,000 from a bank account of the Macau Real Estate Development Company to the Dominican Company.

26

h.    On or about March 9, 2015, YIN deposited or
caused be deposited a check of NGO-1, made out to "cash," into a
bank account of YIN in New York, New York.

(Title 18, United States Code, Section 371.)

### COUNT EIGHT

(Corruptly Obstructing and Impeding and Endeavoring to Obstruct
and Impede the Due Administration of the Internal Revenue
Service Laws)

The Grand Jury further charges:

36.    The allegations set forth in paragraphs One through
Sixteen, Twenty-One, and Thirty-Five are incorporated by
reference as if set forth fully herein.

37.    From at least in or about 2013, up to and including at
least in or about Spring 2015, in the Southern District of New
York and elsewhere, JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin
Chuan," the defendant, corruptly obstructed and impeded, and
endeavored to obstruct and impede, the due administration of the
internal revenue laws, preventing the IRS from assessing and
determining YIN's own tax liabilities and the tax liabilities of
the Dominican Ambassador, by various means, including by
(a) transmitting and causing to be transmitted funds, meant for
the Dominican Ambassador, to the Dominican Company, (b) causing
NGO-1 to pay him in cash or by check made out to "petty cash,"

27

and (c) omitting to tell his accountant that he was compensated by NGO-1.

(Title 26, United States Code, Section 7212(a); Title 18, United States Code, Section 2.)

### FORFEITURE ALLEGATIONS

38.  As a result of committing the offenses alleged in Counts One, Two, Three, Four, and Seven of this Superseding Indictment, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One, Two, Three, Four, and Seven of this Superseding Indictment, including but not limited to, all right and interest of the defendants in all funds currently on deposit in Bank of America checking account ending in 2941 held in the name of Jeff Yin.

39.  As a result of committing the offenses alleged in Counts Five and Six of this Superseding Indictment, NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the offenses alleged in Counts Five and Six of this Superseding Indictment, and any property traceable to such property, including but not limited to, all right and interest of the defendants in all funds currently on deposit in Bank of America checking account ending in 2941 held in the name of Jeff Yin.

Substitute Assets Provision

40.   If any of the above-described forfeitable property, as a result of any act or omission of NG LAP SENG, a/k/a "David Ng," a/k/a "Wu Liseng," a/k/a "Boss Wu," and JEFF C. YIN, a/k/a "Jeff Chuan," a/k/a "Yin Chuan," the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property

29

which cannot be subdivided without difficulty; it is the intent

of the United States, pursuant to 18 U.S.C. §§ 981 and 982, 21

U.S.C. § 853(p), and 28 U.S.C. § 2461, to seek forfeiture of any

other property of said defendants up to the value of the above

forfeitable property.

   (Title 18, United States Code, Sections 981 and 982; Title 21,
United States Code, Section 853; Title 28, United States Code,
Section 2461.)

FOREPERSON

PREET BHARARA
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION

30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

NG LAP SENG,
a/k/a "David Ng,"
a/k/a "Wu Liseng,"
a/k/a "Boss Wu,"
and
JEFF C. YIN,
a/k/a "Jeff Chuan,"
a/k/a "Yin Chuan,"

Defendants.

## SUPERSEDING INDICTMENT

S5 15 Cr. 706 (VSB)

(18 U.S.C. §§ 2, 371, 666(a)(2),
1956(a)(2)(A), and 1956(h);
15 U.S.C. §§ 78dd-2 and 78dd-3;
26 U.S.C. § 7212(a))

PREET BHARARA
United States Attorney.

ANDREW WEISSMANN
Chief, Fraud Section,
Criminal Division.

A TRUE BILL

*Miguel A. Crispu*

Foreperson.

Nov. 22 16
Filed. first Supersed'g Ind'ctment
U.S.M.J. Debra Freeman