```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA                                    :
                                                            :
                                                            :
                                                            :
            - v -                                           :        S5 15-CR-706 (VSB)
                                                            :
NG LAP SENG                                                 :        ORDER
      a/k/a "David Ng,"                                     :
      a/k/a "Wu Liseng,"                                    :
      a/k/a "Boss Wu,"                                      :
                                                            :
                                        Defendant.          :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/26/2017

VERNON S. BRODERICK, United States District Judge:

      Indictment S5 15 Cr. 706 (the "S5 Indictment") charges Defendant Ng Lap Seng with (1) conspiracy to pay bribes and gratuities and to violate the Foreign Corrupt Practices Act ("FCPA"), in violation of Title 18, United States Code, Section 371; (2) payment of bribes and gratuities, in violation of Title 18, United States Code, Section 666; (3) violation of the FCPA as a domestic concern, in violation of Title 15, United States Code, Sections 78dd-2(a)(1)(A), 78dd-2(a)(3)(A), 78dd-2(g)(2)(A); (4) violation of the FCPA while in the United States, in violation of Title 15, United States Code, Sections 78dd-2(a)(1)(A), 78dd-2(a)(3)(A), 78dd-2(g)(2)(A); (5) conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h); and (6) money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A).[1] Currently pending before me are various pretrial motions filed by Defendant Ng, and I address the following motions in this Order: (1) motion to compel the production of

---

[1] Defendant Jeff C. Yin is also charged in the S5 Indictment, but pleaded guilty on April 7, 2017. (Dkt. Entry Apr. 7, 2017.)

the internal documents from all agencies of the Government related to the establishment of a permanent conference center in Macau, China (the "Internal Government Documents"), (Doc. 247; *see also* Docs. 248–49, 272, 296); (2) motion to suppress post-arrest statements, (Doc. 281, *see also* Docs. 283, 285–86, 399, 401, 406); (3) motion to dismiss Indictment S4 15 Cr. 706 (the "S4 Indictment") or in the alternative for a bill of particulars, (Doc. 274; *see also* Doc. 275–77);[2] and (4) motion to strike the S5 Indictment or, in the alternative, to strike references to "Boss Wu" from the S5 Indictment, (Doc. 332; *see also* Docs. 333, 349).

## I.     Motion to Compel

Defendants originally moved to compel three categories of documents—the so-titled conference center documents, PGA documents, and the Internal Government Documents. (*See* Doc. 249.)  The first two categories of documents were discussed and ruled upon during the September 12, 2016 conference and in my September 14, 2016 Order instructing Defendant Ng to meet and confer with appropriate parties at the United Nations; the Government to reasonably assist in Defendant's communications with the United Nations; and the parties to promptly produce to one another any documents they receive from the United Nations.  (Doc. 272; *see also* 9/12 Tr. at 7:25–14:18, 18:18–20:21.)[3]

The remaining category of documents being sought by the motion to compel are the Internal Government Documents.  (*See* Doc. 416 at 1.)  Ng claims that his efforts to have a United Nation's conference center constructed in Macau are protected activities under the First Amendment.  (Doc. 249 at 17.)  According to Ng, "[t]he Internal Government Documents are necessary to determine whether in fact the government selected him for prosecution because of

---

[2] Upon the Government's filing of the S5 Indictment, Defendant Ng also added arguments addressing the new charges brought by that Indictment in his motion to dismiss.  (*See* Docs. 354, 374.)

[3] "9/12 Tr." refers to the Transcript of Oral Argument held on September 12, 2016.  (Doc. 302.)

his protected activities." (*Id.*) Citing *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), Ng asserts that he is being selectively prosecuted and therefore is entitled to the Internal Government Documents. (*See* Doc. 249 at 18–27.) Ng fails to meet the necessary burden for discovery related to a claim of selective prosecution, and his request for discovery must therefore be denied.[4]

A defendant challenging the decision by the Government to prosecute him bears a demanding burden. *See Armstrong*, 517 U.S. at 463–64. Therefore, federal prosecutors retain "'broad discretion' to enforce the Nation's criminal laws." *Id*. at 464 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). With regard to the actions of prosecutors, "'[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id*. (alteration in original) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)). In light of this presumption, the showing necessary to obtain discovery in support of a claim of selective prosecution "should itself be a significant barrier." *Id.* A defendant must meet a "rigorous standard for discovery in aid of such a claim," *id*. at 468, because the "decision to prosecute is particularly ill-suited to judicial review," and "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives

---

[4] Discovery in criminal cases is governed by Rule 16 of the Federal Rules of Criminal Procedure. Ng argues that the Internal Government Documents are material to his defense because if the documents show that the Government singled out Ng because of his efforts to build a center for South South nations within the territory of China, this "would be an unconstitutional motivation, requiring dismissal of the indictment," (Doc. 249 at 2, 4). *See* Fed. R. Crim. P. 16(a)(1)(E)(i). However, Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2); *see also United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("We hold that Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims."); *United States v. Viera*, No. 14 Cr. 83(ER), 2015 WL 3833797, at *1 (S.D.N.Y. June 19, 2015). These documents are also arguably protected from discovery on the basis of the deliberate process privilege. *See, e.g.*, *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005).

and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy," *Wayte*, 470 U.S. at 607.  Therefore, in order for a defendant to obtain discovery he first "must show some evidence of both discriminatory effect and discriminatory intent."  *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam).  A defendant must show that similarly situated individuals were not prosecuted, *id*., and "some evidence" of "genuine animus," not the mere possibility that animus might exist under the circumstances, *United States v. Sanders*, 211 F.3d 711, 718 (2d Cir. 2000).

Defendant Ng does not cite any specific examples where the Government declined to prosecute similarly situated individuals.  (*See* Doc. 249 at 19–21.)  Instead, he states in a conclusory fashion that such individuals must exist, cites to a United Nations Task Force report stating that the PGA has received private funds in the past, and otherwise refers to the "long-standing practice of General Assembly diplomats relying on private donations to carry out their functions."[5]  (*Id.* at 20.)  That the PGA may have received private funds in the past does not equate to other individuals paying bribes.  Ng's speculation about the existence of such individuals is not evidence.  Therefore, Ng has not identified "some evidence" that similarly situated individuals were not being prosecuted.

Similarly, Ng does not even attempt to show evidence of genuine animus or discriminatory purpose directed at him because of his purported exercise of his First Amendment rights.[6]  Instead he argues—on the basis of news articles—some generalized animus towards

---

[5] Ng concedes that other individuals have been subject to bribery prosecutions involving the United Nations, but argues they should not be considered because they involved "procurement or other lower level employees," not diplomats. (Doc. 249 at 19–20.)  Even though the individuals prosecuted in these cases were not diplomats, these cases demonstrate the Government's willingness to prosecute individuals employed by and affiliated with the United Nations for bribery.

[6] Here I assume—without deciding—that Ng's efforts to develop a real estate project in Macau to build a United Nations conference center is protected First Amendment activity.

4

China. (*Id*. at 21–22.) These articles do not amount to evidence that the United States has genuine animus towards Ng because of his efforts to build a United Nations conference center in Macau, nor is it evidence that the prosecution of Ng is motivated by a discriminatory purpose. For these reasons, Ng's motion to compel production of the Internal Government Documents is denied.

## II. Suppression

Defendant Ng also moves to suppress his post-arrest statement. (*See* Doc. 281.) In connection with this Order, I have watched the videotape of Ng's post-arrest statement and read the draft transcripts provided by the parties.

I held oral argument on Defendant Ng's motion to suppress on February 16, 2017. (*See* 2/16 Tr.)[7] During oral argument, the Government stated that it would agree to have me assume that Defendant Ng did invoke his right to counsel. (*See id.* 108:13–19 ("Our position is we can't help your Honor, respectfully, resolve this because our view is this person does not remember this.[8] But it doesn't matter, because we are comfortable with your Honor assuming it actually happened. We are fully comfortable with this Court ruling this was said. . . . Even if your Honor wants to assume it was said, we are a hundred percent comfortable with the Court ruling."); 109:8–12 ("Step 1 in this case is did the defendant invoke? A different case might have a different step 1. Here it is did he invoke. The parties agree. As I have said repeatedly, let's assume he did, either when he is getting printed or at the airport."); 116:24–45 ("We are comfortable with your Honor assuming he invoked before the video began."); 118:6–10 ("So, when I said we are comfortable with your Honor assuming it happened, what I mean is we are

---

[7] "2/16 Tr." refers to the Transcript of Argument held on February 16, 2017. (Doc. 403.)

[8] The Government's reference to "this person" refers to the linguist assisting the agents to take Defendant Ng's post-arrest statement. (*See* 2/16 Tr. 108:3–5.)

comfortable with your Honor assuming what I think is Mr. Ng's position, which is that before he entered that room he invoked his right to counsel in one way or, I think in Mr. Ng's view, three ways.").)[9] The Government also explained that any lack of clarity on the videotape was "not a reason to have a hearing, for two reasons. First, we proffer and will proffer again right now that the linguist has zero memory of this conversation. A hearing is not going to resolve for your Honor what was said." (*Id.* 107:13–108:5.) By letter dated March 14, 2017, the Government clarified its position that "Ng did not unambiguously invoke his right to counsel so as to constitute an invocation, but the Court may assume *arguendo* that he did." (Doc. 421.) At issue during the hearing—and the subject upon which I requested supplemental letters—was what constitutes interrogation for purposes of evaluating the officer's behavior after that unambiguous invocation.

"The government must prove by a preponderance of the evidence that a defendant's waiver of Miranda rights was knowing, voluntary, and intelligent." *United States v. Gonzalez*, 764 F.3d 159, 166 (2d Cir. 2014). "If the accused indicates that he wishes to remain silent, 'the interrogation must cease.' If he requests counsel, 'the interrogation must cease until an attorney is present.'" *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (quoting *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)). "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. In addition, when an accused has expressed his desire to deal with the police only through counsel, he may not be "subject to further interrogation by the authorities until

---

[9] The Government conceded that if a defendant said "I want a lawyer, I want a lawyer," this would be an unambiguous invocation. (*Id.* 104:11–16.)

6

counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id*. at 484–85.  In other words, once a defendant invokes, the defendant, "not the interrogator, is given control over 'the time at which questioning occurs, the subjects discussed, and the duration of the interrogation.'" *Campaneria v. Reid*, 891 F.2d 1014, 1021 (2d Cir. 1989).  The Second Circuit held in *Campaneria* that "if you want to talk to us, now is the time to do it" "was not aimed at resolving any ambiguity . . . but at changing his mind," and was prohibited, warranting suppression.  *Id*. at 1017, 1021.

Here, after Ng invoked, the authorities, without pause, launched into a combined recitation of Ng's *Miranda* rights and waiver of speedy presentment, after which they immediately asked Ng "do you want to talk or do you want to go to court?"  (*See* 2/16 Tr. 97:8–20.)[10]  The Government did not ask whether Ng understood the individual rights delineated by *Miranda* or his *Miranda* rights as a whole, nor was Ng's right to a speedy presentment distinguished in any material way from his *Miranda* rights.  In fact, it appears that Ng was not presented with a written form in Chinese containing his *Miranda* rights.[11]  (*See* Doc. 328-1 (Government Transcript) at 11.)  Moreover, Ng's actions cannot be characterized as reinitiating contact with the agents.  These facts make the Government's continued questioning of Ng improper.  *See Edwards*, 451 U.S. at 484–85 (when a defendant asks for an attorney, he may not be "subject to further interrogation by the authorities until counsel has been made available to

---

[10] According to the Government's transcript, the translator interpreted the question as "So we ask you your choice, do you want to talk with us now?" (Doc. 328-1 (Government Transcript) at 29.)  The discrepancy between the agent's question and the translator's interpretation, which in turn has been translated from Chinese, does not alter my decision.

[11] Upon entering the interview room, the interpreter offered to get a *Miranda* form in Chinese but the agent said that he would read Ng his rights.  (*See* Doc. 328-1 (Government Transcript) at 3–4, 6–8.)  From the videotape of Ng's post-arrest statement, it appears that the agent read Ng his *Miranda* rights and speedy presentment rights from an electronic device.

7

him, unless the accused himself initiates further communication, exchanges, or conversations with the police"); *cf. Gonzalez*, 764 F.3d at 166 (upholding admission of statements where defendant indicated he understood his *Miranda* rights on the first form, declined to answer questions, but reinitiated contact with officers and signed another *Miranda* rights form, after which point he was questioned 45 to 50 minutes).

Therefore, based upon (1) the assumption that Defendant Ng unambiguously invoked his right to counsel a short time prior to him being brought into the interview room, (2) the agent's joint recital of Ng's *Miranda* rights and speedy presentment right without inquiring as to whether Ng understood his *Miranda* rights and without adequately distinguishing between Ng's *Miranda* rights and his speedy presentment right, and (3) immediately following these events, the agent's question "do you want to talk or do you want to go to court," I find that the agent initiated questioning of Defendant Ng after his unambiguous invocation and that a valid knowing, intelligent, and voluntary waiver of Defendant Ng's *Miranda* rights has not been established.[12] *See Edwards*, 451 U.S. at 482–87 (when, the day following invocation, officers confronted Edwards and informed him of his *Miranda* rights again, after which point he implicated himself, Edwards did not initiate the communication and therefore did not waive his rights). Defendant Ng's motion to suppress his post-arrest statements, (Doc. 281), is granted.

### III. Motion to Dismiss or, in the Alternative, for a Bill of Particulars

Defendant Ng has moved to dismiss the S4 Indictment and argues in the alternative that the Government should provide a bill of particulars. In connection with the motion to dismiss,

---

[12] The question "do you want to talk or do you want to go to court" is not materially different from the question "if you want to talk to us, now is the time to do it," which the Second Circuit found designed to change a defendant's mind concerning his decision to remain silent. *See Campaneria*, 891 F.2d at 1017, 1021. Under the circumstances presented in this case, the agent's question was designed to change Ng's mind about wanting an attorney and amounted to interrogation.

Ng contends with respect to the alleged bribery violations under Section 666 and money laundering charges that: (1) the United Nations is not an "organization" covered by that Section 666, Ng did not seek to influence an "agent" of the United Nations, the S4 Indictment does not allege "official acts" and the allegations regarding such acts taken "as opportunities arose" are deficient, the gratuity and bribery theories are deficient, Section 666 does not apply to the alleged payments because they did not implicate the integrity of UN or federal funds, and the alleged payments were not in connection with any "business" of the UN; (2) Section 666 is unconstitutionally vague as applied to him; and (3) the money laundering charges fail because, given the invalidity of the Section 666 charges, there is no "specific unlawful activity" to which the money laundering charges can attach. (*See* Doc. 275 at 6–39.) Upon receipt of the S5 Indictment bringing additional charges against Defendant Ng, Ng further argues that, with respect to the FCPA charges, there was no "official act" and that the FCPA is unconstitutionally vague as applied to him. (Doc. 354 at 20–23; Doc. 374 at 11–14.)

      Because I find that the S4 Indictment and S5 Indictment are legally sufficient and that neither violates the Constitution as applied to Ng, Defendant Ng's motion to dismiss is denied. I will issue a decision detailing the basis for denying Defendant Ng's motion to dismiss prior to the beginning of trial.

      Alternatively, Defendant Ng requests that if I deny his motion to dismiss that I "order the government to provide a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f)." (Doc. 275 at 39.) Specifically, Ng requests a bill of particulars detailing, among other things: (1) the official acts alleged to have been taken by Ambassador Ashe; (2) the identities of Ng's co-conspirators and individuals described as "others known and unknown" in the S4 Indictment; and (3) the timing, amount, forms of payment, and individuals involved in the payment and/or

receipt of the alleged bribes, including the alleged payments to third parties so that they could pay Ambassador Ashe's personal expenses and information related to alleged benefits to "one or more officials at the UN Development Programme in order to gain further support for the Macau Conference Center." (*Id*. at 40–46.) In the briefing post-dating the filing of the S5 Indictment, Defendant Ng reiterated his prior arguments and further contended that the S5 Indictment "exponentially compounded the need for a bill of particulars." (Doc. 354 at 24; *see also* Doc. 374 at 15–19.) Because I find that the S5 Indictment, criminal complaints, search warrant affidavits, and materials produced in discovery adequately inform Defendant Ng of the charges against him to enable him to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense," *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam), Ng's motion for a bill of particulars is denied.

An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Therefore, an indictment should be specific enough for a defendant to prepare a defense, and thereby permit a defendant to "be informed of the nature and cause of the accusation." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). An insufficient indictment may be supplemented by a bill of particulars. *See* Fed. R. Crim. P. 7(f). The intent of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Bortnovsky*, 820 F.2d at 574. "A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United*

*States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001). A bill of particulars "is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *Walsh*, 194 F.3d at 47.

Here, the S5 Indictment sets forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The S5 Indictment spans 31 pages and contains details regarding the bribery scheme and its participants. In any event, even if I assume that the S5 Indictment is insufficient to inform Ng of the nature of the charges against him, I find that the Government has still made sufficient disclosures concerning the nature of the charged offenses by other means, including through the various complaints filed in this case, extensive discovery with an index, agent affidavits, and a written response to the letter request for a bill of particulars. (*See* Doc. 327 at 50, 53–54; *see also* 2/16 Tr.)

Although I deny Defendant Ng's request for a bill of particulars, based upon my inherent authority to regulate pretrial and trial proceedings in this case, *cf. Harris v. Barkley*, 202 F.3d 169, 173–74 (2d Cir. 2000) (citing *United States v. Singh*, 811 F.2d 758 (2d Cir. 1987)), I direct the Government to identify Ng's alleged co-conspirators and the alleged bribe payments, whether in cash or other items of value either directly or through third parties, at least two weeks prior to trial.

### IV. Motion to Strike the S5 Indictment and References to "Boss Wu"

Defendant Ng moves to strike the S5 Indictment or, in the alternative, to strike any references to "Boss Wu." (Doc. 332.) The gist of Ng's argument is that the S5 Indictment is an "eleventh-hour attempt to reshape this case . . . and should not be permitted to impair Mr. Ng's Speedy Trial rights." (Doc. 333 at 8.) Specifically, Ng contends that the Government's delay was unnecessary and prejudicial to Ng's ability to mount a defense, particularly given that Ng

11

must reevaluate the extensive discovery in light of the FCPA's elements.  (*See id.* at 8–11.)
Furthermore, with respect to the references to "Boss Wu," Ng argues that the inclusion of this
alias is unnecessary, irrelevant, and highly prejudicial given its tendency to imply that Ng is
involved in organized crime.  (*See id.* at 11–14.)

The timing concerns inherent in Ng's objection to the S5 Indictment are mooted by the
subsequent adjournments of the trial date.  (*See* Doc. 347 (excluding time between January 23,
2017 and May 15, 2017); Doc. 433 (joint letter requesting adjournment of trial from May 15,
2017 to May 22, 2017); Doc. 436 (Ng letter requesting a 30-day adjournment of trial from May
22, 2017); Dkt. Entry Apr. 7, 2017 (excluding the time between May 15, 2017 and May 30,
2017); Doc. 443-1 (letter signed by Ng consenting to exclusion of time between May 22, 2017
and May 30, 2017 and outlining the recent extension requests).)  Moreover, the Government has
stated that the S5 Indictment does not rely on any new discovery, and Ng has not pointed to any
new or additional discovery that has been produced because of the addition of the FCPA charges.
(*See* 11/23 Tr. 4:15–23.)[13]  For these reasons, Ng's motion to strike the S5 Indictment is denied.

With respect to Defendant Ng's argument in the alternative that references to "Boss Wu"
should be stricken from the S5 Indictment, assuming the proof at trial demonstrates that
individuals referred to Ng as Boss Wu, I will allow the alias to be used at trial.  However, such
reference will be permitted only so long as the jury is informed as to the meaning of "Boss" in
original Chinese, as described in the joint letter submitted by the Government and Ng or as
otherwise agreed upon by the parties.  (*See* Doc. 349 ("The word 'Boss,' in this context, has a
meaning that is similar to that of the English word, namely, it refers to a supervisor or an
individual otherwise entitled to deference owing to one's superior status position.").)  Although

---

[13] "11/23 Tr." refers to the Transcript of the November 23, 2016 Conference.  (Doc. 337.)

Ng's motion to strike references to "Boss Wu" is denied, I direct the parties to meet and confer concerning a possible instruction and/or stipulation that could be read to the jury concerning the meaning of the name Boss Wu, to the extent any reference to that name is made during the course of trial.[14]

### V. Conclusion

For the foregoing reasons Defendant Ng's (1) motion to compel the production of the Internal Government Documents, (Doc. 247), is DENIED; (2) motion to suppress his post arrest statements, (Doc. 281), is GRANTED; (3) motion to dismiss, (Doc. 274), is DENIED; (4) motion for a bill of particulars, (Doc. 274), is DENIED; and (5) motion to strike the S5 Indictment or, in the alternative, to strike references to "Boss Wu" from the S5 Indictment, (Doc. 332), is DENIED.

SO ORDERED.

Dated: April 26, 2017
New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge

---

[14] In making this ruling, I am not ruling that if the S5 Indictment is sent back to the jury room, it can contain references to Boss Wu.