# THE LAW FIRM OF HUGH H. MO, P.C.

225 BROADWAY, 27TH FLOOR
NEW YORK, NEW YORK 10007
(212) 385-1500
FAX: (212) 385-1870 / EMAIL: hhmo8@verizon.net

May 23, 2017

<u>Via ECF</u>

Hon. Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

                Re:  United States v. Ng Lap Seng
                      Case No. S5 15 Cr. 706 (VSB)

Dear Judge Broderick:

      We are the attorneys for Ng Lap Seng for the above-referenced matter. As the Court is aware, it has reserved decision on the Government's Rule 404(b) Notice alleging that Mr. Ng was served with a grand jury subpoena in the District of Nevada in an unrelated matter, but allegedly ignored the subpoena. This narrative was also presented at Mr. Ng's detention hearing to demonstrate his alleged contempt of law, avoidance of authorities, and to support an inference of potential flight risk. The issue was fully briefed and argued before the Court last Thursday. (Doc.#s 455, 456, 463, 479, and 487.)

      This past weekend, we were troubled to review from the 3500 materials, a report of a call with a government agent on May 14, 2017, in which she stated that a subpoena was served on Mr. Ng principally as a ruse in order to cover up the fact that she was "made" during surveillance in July 2014 of Mr. Ng and another individual.  (A copy of this 3500 material will be separately emailed to chambers).  This appears clearly to be a reference to the subpoena, issued on July 30, 2014, that is the subject the 404(b) Notice discussed above. As Your Honor also knows, the purported purpose of that subpoena was to investigate events that occurred decades earlier.  As we established, Mr. Ng's representative wrote the U.S. Attorney's Office that issued that subpoena and received no further reply. We now know why.  No one in the government cared about that subpoena because it was a mere cover.

      These facts raise serious questions of abuse of the grand jury process, but they also call into question the candor of the government at the Court hearing last Thursday, May 18, 2017.  Instead of advising the Court of the sham, or simply telling the Court it had no intention of relying on the subpoena at all, Mr. Richenthal (who had strenuously relied on that subpoena during the detention hearing over a year ago), told the Court:

> ```
> So first, let me say that, as your Honor has heard me
> say a couple of times, in the interest of sort of
> honing the evidence and therein the argument, we don't
> intend affirmatively to introduce any of this --
> ```

THE LAW FIRM OF HUGH H. MO, P.C.

```
                THE COURT: Okay.


                MR. RICHENTHAL: -- unless the defense opens the door
           to it.
```

(Tr. 90:8-14.) Because the government was leaving itself room to raise this claim again, the Court sought clarification:

```
                THE COURT: Let me ask a follow-up question, and I may
           have asked this before. Anybody from the government
           pursue having the subpoena served again? Anyone
           proceed with having contempt proceedings?

                MR. RICHENTHAL: I and our team are not aware of
           anything like that.

                THE COURT: Okay.

                MR. RICHENTHAL: The subpoena was not from this
           district.

                THE COURT: No, I know.

                MR. RICHENTHAL: It so it was not served on behalf of
           this team or this district.

                THE COURT: Right.

                MR. RICHENTHAL: We have no information suggesting that
           did in fact happened, and I think your Honor should
           assume
           it didn't happen.
```

(Tr. 91:21-92:11.) Mr. Richenthal then went on to explain how the door might be opened by the defense. This was all highly misleading at best. The direct response to the Court was that there was, in fact, no governmental follow-up and certainly no contempt proceedings. Instead, Mr. Richenthal disclaimed knowledge one way or the other, claiming "this team" was uninvolved. To the extent "this team" includes the case agents investigating the case (which would have been the logical reading of his assertion), they most certainly were aware of, and behind, the issuance of the subpoena out of Nevada.

As part of the defense motion, we had annexed correspondence from Mr. Ng to the government, along with proof of mailing; yet the government came into Court apparently having done no further investigation of the circumstances. Knowing that the subpoena was a ruse, knowing that Mr. Ng had sought an adjournment of time, and knowing that there had been no further effort on the part of the Nevada U.S. Attorney's Office to follow-up with Mr. Ng, the government nevertheless sought to persuade the Court that it could be entirely appropriate to argue to the jury that Mr. Ng had shown contempt of the subpoena if he "opened the door."

**THE LAW FIRM OF HUGH H. MO, P.C.**

      At a minimum, we ask that the Court convene a hearing to determine what the government's intent was in not only failing to advise the Court of the sham subpoena but arguing that Mr. Ng's failure to comply with the subpoena could become relevant to this case.[1]  Irrespective of the hearing, we renew our motion to preclude any mention of that subpoena or Mr. Ng's response to it at trial, whether Mr. Ng testifies or not.

Respectfully submitted,

Hugh H. Mo

HHM:rw

cc: All Counsel of Record via ECF

---

[1] This inquiry should also explore whether the government was aware of this sham purpose at the time of the detention hearing.