

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 20, 2017

**BY ECF**

The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall United States Courthouse, Room 415
40 Foley Square
New York, New York 10007

>    Re:    *United States* **v.** *Ng Lap Seng*,
>           S5 15 Cr. 706 (VSB)

Dear Judge Broderick:

      The Government respectfully submits this letter in opposition to the defendant's request for the jury to be instructed on two affirmative defenses under the Foreign Corrupt Practices Act ("FCPA").  In his Requests to Charge (Docket No. 478, at 31-32, 38) and proposed foreign law jury instruction (Docket No. 532-1, at 14), the defendant asks the Court to instruct the jury that it "must find the defendant not guilty of [the FCPA counts] if the payment, gift, offer, or promise of anything of value that was made, was [(i)] lawful under the written laws and regulations of the foreign official's country . . . [or (ii)] a reasonable and bona fide expenditure" relating to a specified purpose under the statute.  As explained in greater detail below, the defendant's request fails as a matter of law.

      **I.**    **The FCPA**

      As relevant here, the FCPA makes it unlawful to corruptly offer, pay, promise to pay, or authorize the payment of something of value to a "foreign official" (which includes an official of a public international organization, such as the United Nations) for the purpose of "(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit any act in violation of the lawful duty of such official, or (iii) securing any improper advantage . . . in order to assist . . . in obtaining or retaining business for or with, or directing business to, any person."  15 U.S.C. §§ 78dd-2(a)(1)(A) and 78dd-3(a)(1)(A).

      **II.**    **Local Written Laws Affirmative Defense**

      Under the FCPA, it is an affirmative defense that the "payment, gift, offer, or promise of anything of value that was made, was lawful under the written laws and regulations of the foreign official's . . . country."  15 U.S.C. §§ 78dd-2(c)(1) and 78dd-3(c)(1).  The pertinent

Honorable Vernon S. Broderick
United States District Judge
June 20, 2017
Page 2

countries here are Antigua and Barbuda ("Antigua") as to the Antiguan Ambassador, and the Dominican Republic as to the Dominican Ambassador.

The Court need not, and therefore should not, look beyond the plain language of the statute, which makes clear that to establish this affirmative defense, the defendant must prove that the "*written* laws" of Antigua and/or the Dominican Republic expressly make "lawful" the bribe payments at issue here.

Such a commonsense reading of the statute is squarely supported by its legislative history. When Congress enacted this affirmative defense, it specifically sought "to make clear that the absence of written laws in a foreign official's country would not by itself be sufficient to satisfy this defense." H.R. Rep. No. 100-576 (1988), at 922. As the Fifth Circuit explained, the amendments that codified this defense "illustrate an intention by Congress to identify very limited exceptions to the kinds of bribes to which the FCPA does not apply." *United States* v. *Kay*, 359 F.3d 738, 750 (5th Cir. 2004). "Both houses [of Congress] insisted that their proposed amendments only clarified ambiguities 'without changing the basic intent or effectiveness of the law.'" *Id.* (citing S. Rep. No. 100-85 (1987), at 53 and H.R. Rep. No. 100-40, pt.2, at 77). "[B]y narrowly defining exceptions and affirmative defenses against a backdrop of broad applicability, Congress reaffirmed its intention for the statute to apply to payments that even indirectly assist in obtaining business or maintaining existing business operations in a foreign country." *Kay*, 359 F.3d at 756.

Thus, to use the most extreme hypothetical, payments to a foreign official of a country that has no laws or regulations whatsoever would not remove those payments from the ambit of the FCPA. That is because there is a world of difference between, on the one hand, conduct that is affirmatively lawful under the written laws of a foreign country, and, on the other hand, conduct that is not specifically criminalized (or even addressed) by foreign laws. Congress understood that in fashioning this affirmative defense, and by doing so, it did not delegate power to foreign countries to determine the applicability of the FCPA. *See*, *e.g.*, *United States* v. *Kozeny*, 582 F. Supp. 2d 535, 539-41 (S.D.N.Y. 2008) (defendant not entitled to affirmative defense instruction regarding laws of Azerbaijan because those laws did not make the charged payments "lawful").[1]

---

[1] Commentary is uniformly in accord. *See*, *e.g.*, Kenneth U. *Surjadinata, Revisiting Corrupt Practices from a Market Perspective*, 12 Emory Int'l L. Rev. 1021, 1035 (1998) ("To take advantage of the lawful payments affirmative defense, the transaction must be expressly sanctioned by the 'written laws and regulations' of a country . . . and mere absence of a law prohibiting the conduct is not sufficient."); Philip M. Nichols*, Regulating Transnational Bribery in Times of Globalization and Fragmentation*, 24 Yale J. Int'l L. 257, 288 (1999) ("The exception states that payments that are 'lawful under the written laws and regulations' of a host country are not actionable under the Foreign Corrupt Practices Act. As written, however, the exception requires an affirmative statement that the payment is in fact allowable. The vast majority of laws, however, simply state what payments are not allowable."); Juselino F. Colares*, The Evolving*

Honorable Vernon S. Broderick
United States District Judge
June 20, 2017
Page 3

Far from maintaining written laws that legalize bribery, the Dominican Republic and Antigua expressly *outlaw* bribery. Indeed, the defendant and the Government have submitted a proposed jury instruction about these very laws. Thus, the defendant cannot even attempt to meet the standard necessary to establish the affirmative defense under the FCPA. Faced with this incontrovertible fact, the defendant appears to contend that he is entitled to a jury instruction on this affirmative defense merely by asserting that the Government, in his view, will fail to establish a violation of the applicable foreign laws. That assertion does not entitle the defendant to the affirmative defense instruction, for multiple reasons.

*First*, as described above, the FCPA's plain language and its legislative history make clear that the defendant's position rests on a misreading of the affirmative defense. The proposition that the defendant appears to ask this Court to accept—that "lawful under the written laws and regulations of the foreign official's . . . country" means simply that no written law or regulation expressly prohibits the allegedly unlawful conduct—is inconsistent with the statute's plain language. Indeed, if the defendant were correct, the phrase "under the written laws and regulations" would become meaningless. Congress could have simply written "lawful." But Congress deliberately chose to limit further the defense by requiring that the legality of the particular conduct be expressly codified. *See, e.g.*, *Leocal* v. *Ashcroft*, 543 U.S. 1, 12 (2004) ("[W]e must give effect to every word of a statute wherever possible"); *Ratzlaf* v. *United States*, 510 U.S. 135, 140-41 (1994) (courts "should hesitate . . . to treat statutory terms" as "surplusage—as words of no consequence"); *United States* v. *Nordic Vill. Inc.*, 503 U.S. 30, 36 (1992) (It is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect."). The only reading of the statute that gives meaning to "under the written laws and regulations" is that the written laws and regulations *themselves* must expressly condone the types of payments at issue and thus make the conduct *lawful*.

An FCPA case from this district, *United States* v. *Kozeny*, 582 F. Supp. 2d 535 (S.D.N.Y. 2008), illustrates the narrow applicability of this affirmative defense. In *Kozeny*, the district court held that a defendant was not entitled to an affirmative defense instruction under the FCPA regarding the laws of Azerbaijan even though Azeri written laws relieved a bribe payer of criminal liability under certain circumstances, because those laws did not make the bribe payments themselves "lawful," as is required. 582 F. Supp. 2d at 539-41. In that case, the defendant was charged with bribing foreign officials in connection with a scheme to secure interests in the privatization of Azerbaijan's state-owned oil company. *Id.* at 536-37. The defendant requested the district court to instruct the jury on potential defenses under Azeri law that relieved an individual of criminal responsibility for paying a bribe if he paid the bribe under threat of extortion, or if he self-reported the payment. The defendant argued that, because he bribed certain officials as a result of extortion, and because he eventually reported the payments,

---

*Domestic and International Law against Foreign Corruption: Some New and Old Dilemmas Facing the International Lawyer*, 5 Wash. U. Global Stud. L. Rev. 1, 13 (2006) ("Pursuant to this affirmative defense, the FCPA is inapplicable when a country permits bribes in its legal code. Notably, the exception requires that the law be written, which is rarely the case."). The Government is unaware of authority to the contrary, and the defendant offers none.

Honorable Vernon S. Broderick
United States District Judge
June 20, 2017
Page 4

his actions were "lawful" under Azeri law, and therefore he was entitled to "avail himself of the FCPA's affirmative defense." *Id.* at 539. The district court disagreed, holding that the written laws of Azerbaijan did not render the payments lawful. The court explained that the Azeri defense in question merely encouraged bribe-payers to report bribes in order to help the government to prosecute corrupt officials; it did not, however, "retroactively erase[] the stain of criminality" on the bribe payment itself. In rejecting the defendant's request to charge the jury on the affirmative defense, the court reasoned it did not matter whether an "individual is relieved of criminal responsibility for his actions by a provision of foreign law" because, "for purposes of the [FCPA's] affirmative defense, the focus is on the *payment*, not the *payer*." *Id.* (emphasis in original).

*Second*, the defendant's reading of the affirmative defense would lead to a truly absurd result. Under the defendant's interpretation, every time the Government charges an FCPA case, it would not only need to establish that every element of the FCPA itself was met, but also that every element of the applicable criminal law, if any, in the pertinent foreign country was also met. Stated differently, under the defendant's reading, the FCPA would prohibit only conduct that was already outlawed by a pertinent foreign country because, so the defendant's argument goes, if a country's laws are silent as to the particular payments at issue, then the FCPA cannot apply. There is no support in the statute, the legislative history, or the case law for such an absurd result. The statute therefore cannot be construed in such a manner. *See, e.g.*, *United States* v. *Turkette*, 452 U.S. 576, 580 (1981) ("absurd results are to be avoided"); *Griffin* v. *Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available"); *Church of Holy Trinity* v. *United States*, 143 U.S. 457, 459 (1892) ("absurd results which [would] follow from giving such broad meaning to the words[] makes it unreasonable to believe that the legislator intended" such a meaning).

Indeed, to the Government's knowledge, no court has ever required that, for the Government to prove a violation of the FCPA, it must also prove a violation of foreign law. *See, e.g.*, *United States* v. *Bourke*, No. 05 Cr. 518 (SAS) (S.D.N.Y. Jul. 8, 2009) (jury instructions), *conviction aff'd*, *United States* v. *Kozeny*, 667 F.3d 122 (2d Cir. 2011); *United States* v. *Esquenazi*, No. 09 Cr. 21010 (JEM) (S.D. Fla. Aug. 5, 2011) (jury instructions), *conviction aff'd*, *United States* v. *Esquenazi*, 752 F.3d 912 (11th Cir. 2014).[2] The FCPA is not structured so as to

---

[2] Notably, in *Esquenazi*, although the district court instructed the jury on Haitian bribery law as one of the specified unlawful activities in connection with money laundering charges, the court's instructions on the FCPA count did not include any requirement that the jury find that the defendants had also violated foreign law to find them guilty on the FCPA charges, or that the defendants were entitled to present the jury with the local laws affirmative defense.

Honorable Vernon S. Broderick
United States District Judge
June 20, 2017
Page 5

merely turn violations of foreign law into violations of U.S. law.  Rather, it establishes that certain conduct is criminal under U.S. law even where foreign authorities are unable or unwilling to criminalize or prosecute the conduct themselves.  *See*, *e.g.*, *Kozeny*, 582 F. Supp. 2d at 539-41 (that foreign country relieves the defendant of criminal liability does not entitle him to affirmative defense under FCPA).  Simply put, the FCPA does not rest on foreign law and the statute does not make payments to foreign officials criminal only if they are already criminalized in the applicable foreign country.

*Finally*, if the defendant were correct, then the FCPA's affirmative defense is not, in fact, an affirmative defense at all, because the defendant need not make any showing whatsoever.  He merely needs to claim that his conduct is not criminal under foreign law.  An affirmative defense cannot rest on a defendant's assertion that, in his view, he did not commit a crime prosecutable in a foreign country.  As the Second Circuit has explained, "A defendant is entitled to an instruction on an affirmative defense only if the defense has a foundation in the evidence." *United States* v. *Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005) (internal quotation marks omitted).  The defendant offers none.

### III.  Reasonable and Bona Fide Expenditures Affirmative Defense

The defendant also requests that the jury be instructed on a second affirmative defense under the FCPA.  This affirmative defense requires that the defendant establish that:

> the payment, gift, offer, or promise of anything of value that was made, was a reasonable and bona fide expenditure, such as travel and lodging expenses, incurred by or on behalf of a foreign official . . . and was directly related to (A) the promotion, demonstration, or explanation of products or services; or (B) the execution or performance of a contract with a foreign government or agency thereof.

15 U.S.C. §§ 78dd-2(c)(2) and 78dd-3(c)(2).  The defendant has failed to provide any foundation or legal authority in support of an instruction on this affirmative defense.  The defendant has not even identified which of the payments alleged by the Government as corrupt payments purportedly were "reasonable and bona fide expenditures."  As the legislative history of the FCPA makes clear, "[i]f a payment or gift is corruptly made, in return for an official act or omission, then it cannot be a bona fide, good-faith payment, and this defense would not be available."  H.R. Conf. Rep. 100-576, at 922 (1988), *reprinted in* 1998 U.S.C.C.A.N. 1547, 1955.  To the extent that the defendant is simply arguing that he lacked the requisite corrupt intent, that is not an affirmative defense, but rather an argument that the Government will fail to prove an element that the Government must prove at trial.[3]

---

[3]   As noted above, the defendant has not yet articulated any basis for seeking this affirmative defense.  If and when the defendant identifies an alleged basis, the Government reserves the right to respond as appropriate.

Honorable Vernon S. Broderick
United States District Judge
June 20, 2017
Page 6

                                Respectfully submitted,

                                JOON H. KIM
                                Acting United States Attorney

By:    s/ Daniel C. Richenthal
         Daniel C. Richenthal
         Janis M. Echenberg
         Douglas S. Zolkind
         Assistant United States Attorneys
         (212) 637-2109/2597/2418

         SANDRA MOSER
         Acting Chief, Fraud Section
         Criminal Division

By:    s/ David A. Last
         David A. Last
         Trial Attorney
         (202) 616-5651

cc:    (by ECF)

       All Counsel of Record